United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OZZIE LEE,

Plaintiff,

v.

TEREX CORPORATION, et al.,

Defendants.

Case No. 23-CV-4615-SI

**FINAL PRETRIAL SCHEDULING ORDER**

On August 4, 2026, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning August 17, 2026. All parties were represented by counsel. The following matters were resolved:

**1. Number of jurors and challenges:** There will be a jury of 7 members. Each side shall have 4 peremptory challenges.

**2. Jury questionnaires and voir dire:** The jury office will provide the Court and counsel with copies of the completed juror questionnaires on August 13, 2026. The parties shall meet and confer and inform the Court no later than August 14, 2026 at 10:00 a.m. of any agreed-upon excusals for cause. Prior to jury selection, the Court will inform the jury office of any pre-excused jurors.

Jury selection will be held on August 17, 2026 at 9:00 a.m. The Court will conduct general voir dire, including various of the questions requested by counsel in their proposed additional voir

dire filings. Counsel for each side shall have up to 20 minutes total to question the panel.

**3. Claims Asserted**

Counsel for plaintiff confirmed that he will not present a claim for breach of warranty.

**4. Jury instructions:** The Court received proposed jury instructions from the parties. The Court will hold a jury instruction conference during the trial prior to closing argument to finalize the substantive instructions. At that time, the Court will resolve the pending disputes concerning the consumer expectations/risk-benefit tests and sophisticated user instructions.

**5. Trial exhibits:** No later than August 14, 2026, the parties shall submit their trial exhibits, in binders with an index and numbered tabs separating and identifying each exhibit. The Court shall be provided with two paper sets (one set for the Court and one set for the witnesses) and one electronic set.

**6. Timing and structure of trial:** At the pretrial conference, the parties agreed that the matter should be set for 5 days of evidentiary presentation. Accordingly, the Court will set the matter for a 6 day trial, as follows: each side shall have up to 45 minutes to present opening statements; each side shall have 12 hours total for presentation of evidence, which includes direct and cross-examination and presentation of all exhibits; and each side shall have up to 1 hour for closing argument.

**7. Trial schedule:** Jury selection will begin on August 17, 2026, at 9:00 a.m. The trial day runs from 9:00 a.m. until 3:30 p.m., with a 15 minute break at 10:00 a.m., a 45 minute break around noon and a 15 minute break at 2:00 p.m., all times approximate. The Court does not hear trials on Fridays, although juries may continue to deliberate on Fridays. The parties should be prepared to give opening statements on August 17, 2026, and should have a witness ready for examination that day.

United States District Court
Northern District of California

**8. Motions in limine:** Plaintiff filed 5 motions in limine and Terex defendants filed 5 motions in limine. After consideration of the arguments made in the briefs and at the pretrial conference, the Court rules as follows:

**<u>Plaintiff's Motion No. 1 (excluding reference to claims for workers' compensation, Liberty Mutual, Social Security or other third-party benefits):</u>**

At the pretrial conference, plaintiff withdrew his request that the jury be informed of the workers' compensation lien for medical expenses. Plaintiff instead requests exclusion of reference to any claims against any third-party providers for collateral source benefits. The motion is **GRANTED.** If any party wishes to introduce otherwise relevant evidence that is related in some way to such claims, that party must first seek leave of court.

**<u>Plaintiff's Motion No. 2 (excluding certain testimony of defense expert Jason Berry)</u>**

Plaintiff requests exclusion of certain testimony of Terex defendants' retained product safety expert Jason Berry under Federal Rule of Evidence 702 and *Daubert.* Dkt. No. 124-1. Terex defendants enlisted Berry, a mechanical engineer and the Director of Product Safety at Genie Industries, to provide his opinions as to the design and safety features of the GR-12. Dkt. No. 131-1. Berry is also Terex defendants' 30(b)(6) designee. Dkt. No. 122 at 10. Jason Berry was deposed on May 18, 2026. Dkt. No. 124-1.

As an initial matter, plaintiff argues that Jason Berry is not qualified because he testified during his deposition that he has no professional engineering license, failed the professional engineering exam, has never designed a gas strut, and has no biomechanic or accident reconstruction certification or medical training. Dkt. No. 124-1 ("Berry Depo.") at 9:6-10:21. The Court finds that Jason Berry is qualified to testify as defendants' product safety expert, as he has an undergraduate degree in mechanical engineering, has extensive product safety experience, has worked for Terex defendants in various capacities since 1998, and has worked with the GR-12 and is familiar with the application of gas struts. *See* Berry Depo. at 10:5-17; Dkt. No. 131-1. Thus, Berry's specialized

United States District Court
Northern District of California

knowledge will help the trier of fact to understand the GR-12, the gas strut, and the incident at issue. However, the Court agrees with plaintiff that Berry is not qualified to provide a sophisticated biomechanical analysis of plaintiff's injuries.

The Court concludes that Berry may offer his opinions regarding the safety of the GR-12, relevant design standards and testing of the GR-12, finding such testimony relevant and reliable. However, the Court agrees with plaintiff that Berry may not testify as to legal conclusions regarding the "sole and proximate cause" of the accident. Plaintiff's request that Berry be precluded from testifying as to plaintiff's injuries is denied without prejudice to specific questions at the time of trial.

**GRANTED IN PART/ DENIED IN PART.**

**Plaintiff's Motion No. 3 (excluding evidence, argument or testimony regarding testing of the GR-12 entry gate and gas strut)**

Plaintiff requests that the Court order Terex defendants not to refer to or offer evidence suggesting that the gas strut, its threaded connection, or the GR-12 entry gate was subjected to formal testing or validated. Dkt. No. 124-2 at 8. Plaintiff argues that such references should be excluded because (1) Terex defendants' Rule 30(b)(6) designee and retained expert Jason Berry admitted during his deposition no engineering testing of the gas strut or its threaded connection exists, and (2) defendant "Terex Corporation" acknowledged in its verified discovery responses that it had no testing results and is now foreclosed from introducing testing results at trial under Federal Rules of Civil Procedure 26 and 37(c)(1). *Id.* at 2. Defendants respond that although they did not separately test the gas strut (it was purchased from a third-party vendor), they did do field testing and general design review of the completed entry gates. At the pretrial conference, defense counsel confirmed that defendant has no testing records or documents, and that is why none were produced in discovery.

The Court finds that Berry may offer testimony regarding testing or prototyping of the GR-12, provided that he lay proper foundation. To the extent Berry's testimony regarding testing or prototyping at trial differs from his deposition testimony, that is fodder for cross examination.

Plaintiff may object at trial to reference to specific testing results that defendants did not produce in discovery. However, any statement by Berry that the existence of a final product is by itself evidence that testing must have occurred, without additional foundation, is not "based on sufficient facts or data" or "the product of reliable principles and methods" under Rule 702(b) or (c).

**GRANTED IN PART/ DENIED IN PART.**

**Plaintiff's Motion No. 4 (re United Rentals witness)**

**DENIED AS MOOT.**

**Plaintiff's Motion No. 5 (precluding evidence of an absence of prior incidents)**

Plaintiff seeks an order barring defendants from introducing evidence of the absence of other similar incidents related to the GR-12. Dkt. No. 124-4. Specifically, plaintiff asks to preclude testimony that defendant Genie was not aware of similar incidents, that 46,500 machines were sold worldwide without report of similar injury, or that the GR-12 was not defective because of an absence of similar reported instances, as asserted by Terex defendants' expert Jason Berry in his expert report and during his deposition. Dkt. No. 124-4 at 1,4. Plaintiff also argues that the "field incident" accident reports Berry relies on to form his conclusions are unreliable and inadmissible hearsay. *Id.* at 2-4; *see also,* Dkt. No. 124-4, Ex. 1 ("Berry Depo.") at 174:3-175:21. Finally, plaintiff argues that Terex defendants are precluded from offering such testimony because "defendants' parent company," Terex Corporation, did not produce data regarding the number of replacement gas struts shipped or field complaints involving gas strut failures. *Id.* at 6-7; *see also*, Dkt. No. 124-4, Ex. 3.

Plaintiff identifies several authorities for the proposition that evidence of other accidents is admissible to prove negligence, design defect, or notice of defects based on a showing of "substantial similarity." *See, e.g., White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002). However, plaintiff cites no federal case law or Federal Rule of Evidence to suggest that a *lack* of evidence of other accidents is inadmissible. Plaintiff relies on an unpublished Washington state case, *McNeal v. Genie Indus., Inc.*, 14 Wash. App. 2d 1053 (Wash. Ct. App. Oct. 12. 2020),

involving Genie Industries. In that case, a Washington Court of Appeals found that the trial court did not abuse its discretion by excluding testimony from Genie's employees that Genie was aware of no other similar incidents, where the Court found Genie had no system for gathering accident reports, as unduly prejudicial under the Washington Code of Evidence. *Id.* at *5-6.

Terex defendants oppose plaintiff's motion as a factual challenge regarding whether similar incidents took place, which goes to weight not admissibility and invades the province of the jury. Dkt. No. 135 at 2-3. As support, defendants point to Ninth Circuit precedent finding that a district court did not abuse its discretion in concluding there was sufficient foundation as to a witness's knowledge of a lack of customer complaints regarding a tear gas spraying device. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879-880 (9th Cir. 1990); *see also Pate v. Columbia Mach. Inc.,* 930 F. Supp. 451, 459 (D. Idaho 1996) ("[t]he absence of prior evidence is relevant evidence in a products liability action.").

The Court agrees with defendants that plaintiff's motion is premature. If Berry or Terex defendants' other witnesses can lay proper foundation as to Terex defendants' knowledge of a lack of reports regarding substantiality similar incidents, evidence regarding the absence of other accidents related to the G-12 is relevant..

**DENIED WITHOUT PREJUDICE.** Plaintiff may re-raise objections at trial.

**<u>Terex Defendants' Motion No. 1 (precluding lay opinion by Victor Jaquez)</u>**

Terex defendants seek to exclude the lay opinion of Victor Jacquez, an ACCO Systems Safety Manager, under Federal Rule of Evidence 701. Dkt. No. 111. Jacquez has not been retained as an expert. *see* Dkt. No. 111-4, Ex. C.[1] Jacquez responded to the jobsite shortly after plaintiff's injury, arranged medical care, interviewed plaintiff, inspected the subject GR-12 lift, photographed the equipment, personally observed the gas-strut disconnected from its mount, and examined the GR-12 prior to any repairs. Dkt. No. 140 at 2. Jacquez also prepared an "Incident Safety Manager

[1] Jacquez was deposed on February 21, 2024. Dkt. No. 111-2, Ex. A ("Jacquez Depo.").

United States District Court
Northern District of California

Report" on July 31, 2022 regarding the incident. Dkt. No. 111-3, Ex. B.[2] Jacquez's report includes a description of the incident, three photos, a "root cause analysis (5 Whys)", and findings that include opinions as to causation. *Id.*

Rule 701 permits a non-expert witness to offer opinion testimony only if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The advisory committee notes to Rule 701 explain that the 2000 amendment to Rule 701 exists to "ensure that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 [ ] by simply calling an expert witness in the guise of a layperson." *Id.*, Committee Notes on Rules – 2000 Amendment. The advisory committee further explains that the distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." *Id.* (quoting *State v. Brown*, 836 S.W.2d 530, 549 (1992)). In *Brown*, the Court explained that a lay witness could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma. *Id.* The Ninth Circuit has been clear that this distinction applies even where the witness was present at the scene, where testimony veers beyond the requirements of Rule 701. *U.S. v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997).

Plaintiff argues that Terex defendants conflate percipient testimony with technical opinion. Dkt. No. 140 at 6-7. The Court is sympathetic to Terex defendants' concerns that Jacquez intends to give expert testimony based on his specialized knowledge of gas struts while disguised as a lay witness. However, the Court also acknowledges that plaintiff presents Jacquez as a non-retained expert who has firsthand knowledge related to the incident and prepared a report shortly after the incident, but happens to also have specialized expertise. Plaintiff's opposition acknowledges as

[2] This incident report is the subject of Terex defendants' second motion in limine, discussed more fully below. Dkt. No. 112. Terex defendants also filed a fifth motion in limine, seeking to exclude Victor Jacquez as an expert witness. Dkt. No. 115.

much in explaining that Jacquez's lay testimony will be informed by "extensive practical experience with lifts" and his work in industrial and construction safety since 2001. Dkt. No. 140 at 5.

**DENIED WITHOUT PREJDUICE.**[3] As a lay witness, Jacquez may testify only as to his personal observations developed during his response to the incident, his examination of plaintiff and the subject GR-12, the condition of the gas strut (to the extent his testimony is based on his perceptions), the photographs he took, and his operation of the gate. Terex defendants may object at trial to specific testimony that veers into scientific or technical knowledge without meeting Rule 702's requirements.

**<u>Terex Defendants' Motion No. 2 (excluding Victor Jacques' safety report)</u>**

Terex defendants seek to exclude Victor Jacquez's "Incident Safety Manager Report" prepared on July 31, 2022 as inadmissible hearsay, irrelevant, and unduly prejudicial. Dkt. No. 112. The report provides general information such as time and date, a description of the incident, three photos, a root cause analysis, and findings based on "objective data." Dkt. No. 113, Ex. B.

Plaintiff argues that the report is admissible as a record made during the regular course of business under Rule 803(6) and is highly relevant and probative. Dkt. No. 139. Plaintiff requests that if the Court determines that discrete statements are inadmissible, a redacted version of the report be presented to the jury. *Id.* at 10. However, at the pretrial conference, counsel for plaintiff stated that she would not be seeking admission of the report at trial, but that it might be referred to by the witness to refresh his recollection. The following analysis concerns admission of the document itself, but also may be useful to the parties in the event counsel does not seek to admit the document.

Rule 802 bars hearsay evidence unless an exception applies. Fed. R. Evid. 802. Rule 803(6) allows admission of a record of an act, event, condition, opinion, or diagnosis if:

> **(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge;

---

[3] Terex defendants' proposed order (Dkt. No. 115) seeks exclusion of the "opinions of others that are based on the lay opinion of Victor Jacquez." The Court denies this request as overly broad and unclear.

> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** making the record was a regular practice of that activity;
>
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The Court finds that Jacquez's report is relevant because it is based on his examination of the GR-12 prior to its repair, his response to the scene, and his interactions with plaintiff shortly after the incident. It also includes photos of the GR-12 from after the incident. Moreover, it was prepared in the ordinary course of business not in anticipation of litigation. What is less clear is whether Terex defendants have shown that the source of information or the method or circumstances of preparation of Jacquez's report indicate a lack of trustworthiness, and whether Jacquez's report is unduly prejudicial. *See* Fed. R. Evid. 803(6)(e); 403.

Specifically, Terex defendants argue that Jacquez's report is unreliable because it is based on accounts from others. Jacquez testified during his deposition that he was notified about the incident by the general foreman Scott Sliter.[4] Dkt. No. 112-2 ("Jacquez Depo.") at 57:6-24. Sliter also prepared his own separate incident report. *Id.* at 61:1-5. Jacquez testified that he relied on Sliter's completed report to create the Incident Safety Management Report at issue. *Id.* at 63:5-19; 66:4-14. Jacquez also relied on the conversation he had with plaintiff when he arrived at the location of the incident. During that conversation, plaintiff stated that he had done a visual inspection of the equipment prior to using it. Dkt. No. 139 ("Jacquez Depo.") at 48:21-49:5; 64:21-65:9.

Terex defendants primarily rely on the Ninth Circuit's decision in *Jensen v. EXC, Inc.,* which held that the district court erred in allowing the hearsay opinions of a non-testifying state trooper who investigated a crash and expressed his opinion as to how it occurred in a report. 82 F.4th 835, 840 & 850 (9th Cir. 2023) ("the excerpts proffered . . . which consisted of the author's opinion as

[4] Scott Sliter is also on the witness list submitted to the Court. Dkt. No. 122 at 13.

to the cause of the accident—lacked any independent guarantee of trustworthiness that would justify dispensing with cross-examination of the report's author, and there was likewise no effort to qualify as an expert the person who rendered that opinion") (internal quotation marks and citation omitted). Plaintiff points out that here, unlike in *Jensen*, Jacquez is available to testify and can be cross-examined about the reliability of his report. The Court notes that Sliter also appears to be available to testify. Depending on their testimony at trial, the report may be admissible.

The Court agrees with defendants' that certain conclusions in the report, particularly in the root cause analysis, may not be sufficiently reliable because they include inadequately supported conclusions from a non-expert based on unclear sources. *See Jensen*, 82 F. 4th at 850. Determination of admissibility will depend on testimony at trial.

**DENIED WITHOUT PREJUDICE.** Terex defendants may re-raise specific issues with portions of the report that should be redacted at the time of trial, should it be offered in evidence.

**<u>Terex Defendants' Motion No. 3 (precluding reference to the consumer expectations test)</u>**

As noted above, the Court will rule on the parties' competing jury instructions at an instructions conference during trial. Until these legal questions are resolved, neither party may refer to the consumer expectations test, or any other legal test. The motion is **GRANTED.**

**<u>Terex Defendants' Motion No. 4 (motion excluding testimony of plaintiff's retained expert Devinder Grewal)</u>**

The Terex defendants request that the Court exclude plaintiff's retained expert Dr. Devinder Grewal under Federal Rule of Evidence 702 and *Daubert.* Dkt. No. 114. In the alternative, Terex defendants request a hearing to permit the Court to fully evaluate Dr. Grewal's opinions before testifying to a jury. *Id.* at 1. Dr. Grewal has a PhD in Mechanical Engineering and works providing consulting services in accident reconstruction, failure analysis, and engineering design and laboratory/field testing. Dkt. Nos. 114-3, 114-5. Dr. Grewal has investigated accidents involving the failure of gas struts and has designed and specified a gas strut for use on an automotive hood.

*Id.* Dr. Grewal tested the subject GR-12 on March 5, 2025, after the subject strut had been replaced. Dr. Grewal intends to testify that the subject GR-12's gas strut separated at the threaded connection, allowing the entry gate to descend eight times faster than it would with a functioning strut, causing plaintiff's injury. Dkt. No. 122 at 11. Further, he will testify that feasible alternatives such as metal end fittings secured with thread-locking compound could have made the GR-12 safer. *Id.* Dr. Grewal will also testify that Terex defendants failed to adequately analyze, test, warn or provide inspection and replacement guidance for this type of failure. *Id.*

The Court finds that Dr. Devinder Grewal is qualified to opine on the incident based on his extensive academic and professional experience. Dr. Grewal's opinion is based on sufficient data, including his own physical testing of the subject GR-12, measurements, comparisons with exemplar components provided by Terex and alternative components, as well as testimony of plaintiff and witnesses. While Terex defendants argue that Dr. Grewal's testimony highlights missing information, particularly the exact position of plaintiff's hand when using the GR-12, Dr. Grewal can still plausibly reach a conclusion as to the GR-12's defective design, and indeed he offers sufficient to analysis to explain his opinion that design of the gas strut led to an unsafe entry gate. The Court is also not persuaded by Terex defendants' arguments that Grewal's report is unreliable because he did not review the American National Standards Institute ("ANSI") standards for the purposes of his initial report.

**DENIED.** Defendants' concerns can be addressed on cross-examination.

**<u>Terex Defendants' Motion No. 5 (motion to exclude plaintiff's non-retained expert Victor Jacquez)</u>**

The Terex defendants seek an order from this Court precluding testimony from Victor Jacquez under Federal Rule of Evidence 702, *Daubert,* and Federal Rule of Civil Procedure 26(a)(2)(C). Dkt. No. 115. Terex defendants argue that Jacquez lacks the requisite qualifications, bases his findings on unreliable data and flawed methodology, and will mislead the jury. *Id.* at 10-15. Terex defendants also argue that Jacquez should be precluded from testifying under Fed. R. Civ. P. 26 because he was not properly disclosed. *Id.* at 15. In the alternative, Terex defendants

seek an order limiting Jacquez's testimony to his personal observations made during his inspection and excluding any expert opinion testimony. *Id.* at 17. f

Plaintiff responds that it does not seek to offer Jacquez as an expert design engineer, metallurgist, materials scientist, or accident reconstructionist. Dkt. No. 142 at 10. Instead, plaintiff argues that Jacquez's "limited opinions" that "the strut provided resistance, that the connection separated during his inspection, that the gate slammed after separation, and that the equipment should be removed from service are grounded in his contemporaneous examination of the actual lift and reliable application of his practical experience." Dkt. No. 142. The Court finds such limited testimony to be admissible if the proper foundation is laid.

**DENIED, without prejudice to objections at time of trial if improper expert testimony is offered.** As addressed regarding defendants' first motion, Jacquez may testify to the extent his testimony is rationally based on his perceptions.

**9. Other matters:**

The Terex defendants may bring a sample GR-12 lift into the courtroom after 4:00 p.m. on Monday, August 17, 2026, at the end of the court day. Plaintiff may call witnesses Lischka and Calderon, but only if defendants have the opportunity to depose them prior to trial. All parties will endeavor to schedule medical witnesses at a time and on a date when attorney McIntyre is available.

**IT IS SO ORDERED**.

Dated: August 5, 2026



SUSAN ILLSTON
United States District Judge